FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 02, 2023

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NEIL GRENNING, | No. 2:22-CV-00136-MKD |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO STAY, AND DENYING DEFENDANTS' MOTION TO STAY REMAINING SCHEDULING ORDER DEADLINES AS MOOT |
| JAMES R. KEY, sued in his official and individual capacity, and ANN WISE, sued in her official and individual capacity, | |
| Defendants. | |
| | **ECF Nos. 24, 30, 34** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No.

24, Plaintiff's Motion to Stay, ECF No. 30, and Defendant's Motion to Stay

Remaining Scheduling Order Deadlines. The Court has reviewed the record and is

fully informed. For the reasons set forth below, the Court grants Defendants'

motion for summary judgment, ECF No. 24, denies Plaintiff's motion to stay, ECF

No. 30, and denies Defendants' Motion to Stay Remaining Scheduling Order

Deadlines as moot.

ORDER - 1

# BACKGROUND

## A. Procedural History

Plaintiff, an inmate at Airway Heights Corrections Center (AHCC), filed a *pro se* Complaint in the Spokane County Superior Court, alleging Defendants violated his rights by refusing to submit a story he wrote to be considered for publication, and informing Plaintiff he would be removed from a writing program if he did not follow the program protocols. ECF No. 1-2. Specifically, Plaintiff brings a Section 1983 claim, alleging Defendants violated Article I, Section 5 of the Washington State Constitution and the First Amendment of the United States Constitution. *Id*. Defendants removed the case to this Court. *Id*. Defendants filed a Motion for Summary Judgment, ECF No. 24, and Plaintiff filed a Motion to Stay, ECF No. 32. Plaintiff was provided notice of the summary judgment rule requirements. ECF Nos. 28, 29. Plaintiff's Motion to Stay contains a "relevant facts" section that only addresses alleged discovery issues; Plaintiff did not dispute any of Defendants' facts. ECF Nos. 25, 30. Plaintiff contends he needs further discovery to be able to oppose summary judgment. ECF No. 30. Plaintiff has not demonstrated that he is entitled to further discovery.

## B. Undisputed Facts

Plaintiff has been convicted of multiple sex crimes and is currently incarcerated due to the convictions. ECF No. 25 at 1-2; ECF No. 26 at 4-42. In

ORDER - 2

2019, while an inmate at AHCC, Plaintiff enrolled in Writers in the Community (WITC), an optional writing course offered by Eastern Washington University. ECF 1-2 at 4; ECF No. 25 at 2-3.  The course was supervised by Defendant Wise, the Community Partnership Program Coordinator at AHCC.  ECF No. 1 at 3, 8-9; ECF No. 27-2 at 7.  Inmates who were enrolled in WITC had the opportunity to submit a piece of their writing for publication in the program's journal, *InRoads*. ECF No. 1-2 at 4; ECF No. 25 at 2-3.  When submitting a piece, participants were required to sign and submit a publication agreement.  ECF No. 1-2 at 4; ECF No. 25 at 2-3.  The publication agreement states that *InRoads* is published to a public audience, including children and special populations who are "sensitive to any kind of explicit material."  ECF No. 1-2 at 4; ECF No. 25 at 3; ECF No. 27-4 at 2.  The agreement also states that "[s]ubmissions with graphic content will be returned to the author."  ECF No. 27-4 at 2.  Plaintiff wrote a piece titled "Dark Room," and submitted it, along with the required publication agreement, for consideration for publication.  ECF No. 1-2 at 4; ECF No. 25 at 3.  Plaintiff's piece included sexual content and mentioned drugs and suicide.  ECF No. 1-2 at 5-6; ECF No. 24 at 3; ECF No. 27-6 at 2-6.

Participants were informed that Defendant Wise had authority to pre-screen the submissions.  ECF No. 1-2 at 4-5; ECF No. 27-1 at 3; ECF No. 27-2 at 4; ECF No. 30 at 6.  Defendant Wise declined to submit Plaintiff's piece for publication,

ORDER - 3

due to the sexual content.  ECF No. 1-2 at 5; ECF No. 27-7.  After Defendant Wise

declined to send Plaintiff's submission to Eastern Washington University, Plaintiff

sent the piece directly to the University for publication consideration.  ECF No. 1-2

at 5; ECF No. 25 at 4.  Plaintiff then sent a letter to Defendant Key, the

Superintendent of AHCC, contesting Defendant Wise's rejection of his piece, and

informing Defendant Key that Plaintiff had submitted the piece directly to the

University.  *Id.*  Defendant Key responded to Plaintiff's letter and stated he agreed

with the rejection of the piece and informed Plaintiff he would not be allowed to

continue in the writing program if he did not follow the program's protocols.  ECF

No. 1-2 at 5-6; ECF No. 25 at 4.  Plaintiff then filed a grievance with the AHCC

grievance coordinator, alleging retaliation and suppression of his "First

Amendment rights to publish."  ECF No. 1-2 at 6; ECF No. 25 at 4.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906

(9th Cir. 2019).  "A fact is 'material' only if it might affect the outcome of the

case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the

issue in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes Benz USA,*

*LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' [that] demonstrate the absence of a genuine dispute of material fact." *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, or admission on file "specific facts showing that there is a genuine [dispute of material fact] for trial." *Id.* at 324.

The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255. "Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" *Fresno Motors*, 771 F.3d at 1125 (quoting *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006)).

1   A *pro se* litigant's contentions offered in motions and pleadings are properly

2   considered evidence "where such contentions are based on personal knowledge

3   and set forth facts that would be admissible in evidence, and where [a litigant]

4   attest[s] under penalty of perjury that the contents of the motions or pleadings are

5   true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations

6   in a *pro se* plaintiff's verified pleadings must be considered as evidence in

7   opposition to summary judgment). Conversely, unverified pleadings are not

8   treated as evidence. *Contra Johnson v. Meltzer*, 134 F.3d 1393, 1399-400 (9th Cir.

9   1998) (verified motion swearing that statements are "true and correct" functions as

10  an affidavit); *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir.

11  1995) (pleading counts as "verified" if drafter states under penalty of perjury that

12  the contents are true and correct). Although *pro se* pleadings are held to less

13  stringent standards than those prepared by attorneys, *pro se* litigants in an ordinary

14  civil case should not be treated more favorably than parties with attorneys of

15  record. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

16                                    **DISCUSSION**

17  **A. Motion to Stay**

18       On April 4, 2023, Plaintiff filed a Motion to Stay Summary Judgment and

19  Extension for Completion of Outstanding Discovery Pursuant to Rule 56(d). ECF

20  No. 30.

ORDER - 6

When the nonmoving party to a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2). The district court may also defer the motion for summary judgment, deny it, or issue any other order it finds appropriate. Fed. R. Civ. P. 56(d)(1), (3). A Rule 56(d) motion may be denied when the party seeking deferral has not diligently sought discovery or additional discovery would be futile or irrelevant to the dispute. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 57 F.3d 1424, 1436 (9th Cir. 1995).

Plaintiff mailed a request for production of documents to Defendants on August 22, 2022. ECF No. 30 at 1. Defendants objected to the request, and defense counsel agreed to look at the discovery request again and locate responsive documents, and counsel stated they would pursue documentation of Defendant Wise's employment record. *Id.* at 1-2. Plaintiff contends Defendant delayed in providing responsive documents, and Defendants never provided Defendant Wise's employment record, nor the agreement Defendants report provided Defendant Wise authority to screen for publishing criteria. *Id.* at 2-3. Plaintiff reports he served a Request for Admissions on Defendants on February 17, 2023, and Defendants have not responded. *Id.* at 3.

Plaintiff contends the Request for Admissions is outstanding and necessary to respond to the Motion for Summary Judgment. *Id.* at 7. Plaintiff contends the Request for Admissions asks Defendants to admit no agreement exists that enabled Defendant Wise to screen the submissions pursuant to set criteria, and states Defendants' response is necessary to demonstrate the agreement does not exist. *Id.* at 7-8. Plaintiff contends that Defendants' Motion for Summary Judgment relies on the existence of said agreement. *Id.*; ECF No. 24.

First, Plaintiff has not demonstrated that he diligently sought discovery. While he contends Defendants failed to produce requested discovery and respond to the Request for Admissions, ECF No. 30 at 2-3, Plaintiff offers no explanation as to why he did not seek to compel discovery prior to the deadline. Regarding the Request for Admissions, Plaintiff served Defendants the Request for Admissions on February 17, 2023. ECF No. 32-1. However, the deadline to serve requests for admission was January 27, 2023. ECF No. 23 at 19. Plaintiff did not request an extension of the deadline. The deadline to file a motion to compel discovery was March 10, 2023. *Id.* Plaintiff argues requests for admission are not subject to discovery cutoff dates. ECF No. 33 at 2. This argument is without merit. Plaintiff cites to cases from other jurisdictions in which the courts addressed whether requests for admissions are subject to general discovery deadlines. *See O'Neill v. Medad*, 166 F.R.D. 19, 21 (E.D. Mich. 1996); *Hart v. Coyne Cylinder Co.*, 124

F.R.D. 614, 615 (W.D. Tenn. 1989).  Here, the issue is not a general discovery

deadline, Plaintiff disregarded an explicit deadline in the scheduling order: "All

interrogatories, requests for production, and requests for admission, served . . .

January 27, 2023."  ECF No. 23 at 19.  Thus, Plaintiff's request was untimely.  The

Court finds Defendants were not obligated to respond to the untimely request.  *See*

*Lee v. Lee*, No. CV198814JAKPVCX, 2021 WL 430696, at *11 (C.D. Cal. Jan. 27,

2021) (holding defendants were under no obligation to respond to requests sent 20

days after the after deadline); *see also Bishop v. Potter*, 2010 WL 2775332, at *1

(D. Nev. July 14, 2010); *Lee v. Ballesteros,* 2015 WL 4872664, at *1 (E.D. Cal.

Aug. 12, 2015); *Wendell v. Johnson & Johnson*, 2013 WL 1741704, at *5 (N.D.

Cal. Apr. 22, 2013); *Jones v. Wells Fargo Bank, N.A.*, 2015 WL 136141, at *1

(W.D. La. Jan. 9, 2015).

Despite the request being untimely, and Plaintiff not seeking a motion to

compel before the deadline, Plaintiff now contends the Court should stay the

motion for summary judgment to give Defendants time to respond to the Request

for Admissions.  ECF No. 33 at 2.  "Untimeliness is sufficient ground, standing

alone, to deny a discovery motion."  *Williams v. Las Vegas Metro. Police Dep't*,

2015 WL 3489553, at *1 (D. Nev. June 3, 2015).  Additionally, when a party

requests to reopen discovery after discovery has closed, the request must also meet

the requirements of Federal Rule of Civil Procedure 16.  Rule 16 states that a

scheduling order may only be modified for good cause and with the judge's

consent. Fed. R. Civ. P. 16. The good cause standard focuses on the diligence of

the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975

F.2d 604, 609 (9th Cir. 1992). Further, a "district court's decision to hold litigants

to the clear terms of its scheduling orders is not an abuse of discretion." *KST Data,*

*Inc.*, 344 F. Supp. 3d at 1136 n.1. Given Plaintiff's untimely service of the

requests for admission, and his lack of pursuit of a motion to compel prior to the

deadline, the Court finds it is within its discretion to hold Plaintiff to the terms of

the scheduling order. Plaintiff offers no explanation as to why he served the

request late, except to state Defendants delayed in responding to the initial

discovery request. ECF No. 3 at 3. However, Plaintiff did not need to wait to

serve the requests for admissions. Further, he did not seek a motion to compel the

discovery prior to the deadline. Plaintiff has not demonstrated good cause for the

Court to modify the scheduling order and reopen discovery for the requests for

admission.

    Plaintiff also asserts that the requests should be deemed admitted because

Defendants did not timely object or file a protective order in response to the

requests. ECF No. 33 at 2. He states Defendants returned the requests,

unanswered, more than a month after he served them. *Id.* As discussed *supra,*

Defendants were under no obligation to respond. However, Defendants returned

the requests with a letter, which indicated they were returning the requests because they were served after the discovery deadline. ECF No. 32-2 at 2. Defendants' response, sent 32 days after Plaintiff served the requests, indicates they objected to the requests as untimely. ECF No. 32-2. Plaintiff cites to *Hadley* to support the contention Defendants were obligated to promptly object, move for a protective order, or respond, and the requests should be deemed admitted due to the lack of timely response. ECF No. 33 at 2. In *Hadley*, the request for admission was untimely served on Hadley, and Hadley did not object to the untimely service and did not respond to the request; the requests were deemed admitted, and Hadley sought to withdraw the admissions, which was denied by the district court. *Hadley v. United States*, 45 F.3d 1345, 1347 (9th Cir. 1995). Hadley appealed, and the Ninth Circuit stated, "An argument may be made that Hadley had no obligation to respond to the requests because they themselves were served late." *Id.* at 1350. The Ninth Circuit further reasoned the district court should have considered that the opposing party's own tardy service and found Hadley's motion to withdraw admissions should have been granted so the case could be decided on the merits. *Id.* Here, the Court considers Plaintiff's untimely service of the requests, Defendants' objection to the requests, and the Court's preference to decide cases on the merits.

Plaintiff cites to a Southern District of New York decision in which the court stated motions for protective order under Rule 26(c) must be served before the production cutoff.  ECF No. 3 at 3.  Plaintiff ignores the fact that the discovery motion was timely served in *IBM*, unlike this case.  *See United States v. IBM*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976).  Plaintiff also cites *Wyles* and argues the Central District of California stated that the majority view among courts is that a party must "move for a protective order based on untimeliness of the requests."  ECF No. 33 at 2.  Plaintiff quotes only a selection of the relevant portion of the case. The full quote states, "promptly object or move for a protective order." *Wyles v. Sussman*, 445 F. Supp. 3d 751, 757 (C.D. Cal. 2020) (citing *Hadley*, 45 F.3d at 1350).  In *Wyles,* the party never objected nor responded to untimely served requests for admissions.  *Wyles*, 445 F. Supp 3d at 755.  Here, Defendants objected.  Plaintiff did not motion to compel a response prior to the deadline. Further, in *Wyles,* the court discussed the importance of schedules and deadlines, and the need for courts to not encourage conduct that unnecessarily consumes the Court's time and resources.  *Id.* at 758 (citing *Wong v. Regents of Univ. of California,* 410 F.3d 1052, 1060 (9th Cir. 2005)).  The Ninth Circuit stated in *Wong,* "Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders." *Wong,* 410 F.3d at 1060.  Just as the court in *Wyles* denied a motion to compel for a party who failed to diligently

1  pursue their discovery, the Court here will not deem requests admitted that Plaintiff

2  untimely served and failed to pursue a motion to compel to obtain prior to the

3  deadline.  Plaintiff's request to deem the requests admitted is denied.

4      Next, Plaintiff contends the Motion for Summary Judgment should be stayed

5  and discovery reopened so Plaintiff can obtain the reported agreement between the

6  University and Defendant Wise, and Defendant Wise's employment history.  ECF

7  No. 30 at 3; ECF No. 33 at 4.  Plaintiff contends Defendants did not respond to his

8  requests for both documents, thus the motion for summary judgment should be

9  stayed due to Defendants' failure to respond to the discovery requests.  ECF No.

10  30 at 3-5.  Plaintiff contends there is no agreement that afforded Defendant Wise

11  the power to review submissions and disqualify them based on content and

12  contends Defendant Wise's employment history would support his contention that

13  her screening was based on her own religious-based moral beliefs and not a

14  contracted standard set for screening.  *Id.* at 2-6.

15      As to the agreement, Plaintiff concedes he received a copy of the syllabus,

16  which states Defendant Wise is the person who approves submissions.  *Id.* at 6.  He

17  received a copy of the WITC syllabus, which states "Writers are expected to

18  adhere to all DOC/AHCC behavioral standards in both their writing and in class.

19  Students are already aware of what these standards and expectations are, but if you

20  have questions, please contact Community Partnership Program Coordinator Ms.

Wise," and "all Airway Heights policies must be adhered to at all times. Inappropriate content or conduct will be reported." ECF No. 27-2 at 2-3. He also received a copy of the *InRoads* Publication Agreement, which states "Submissions with graphic content will be returned to the author." ECF No. 27-4 at 2. He also received a copy of the WITC Contract, which contrary to Plaintiff's assertion, is signed. ECF No. 27-1 at 2-3. The contract states, "WITC agrees that any writings submitted for publication by the inmates must be reviewed and pre-approved for publication by the CPCC. Inmates' writings, submitted for publication, must reflect the behavior expectations of the institution." ECF No. 27 at 3. Defendant Wise's position description states part of her duty is to "Ensure policy compliance." ECF No. 27-3 at 3. Plaintiff has thus been provided evidence Defendant Wise was given authority to screen the submissions and evidence there were set policies, contrary to his contention that he was not provided proof of such authority and policy.

Plaintiff contends discovery should be reopened because Defendants did not provide a specific agreement that states Defendant Wise could assess the submissions' content to determine if they are appropriate for publication. ECF No. 33 at 5 (citing ECF No. 10). Plaintiff has been provided multiple documents responsive to his request, but he contends those documents did not authorize Defendant Wise to screen the writing submissions. ECF Nos. 31, 33. His

1    argument is circular because he simultaneously contends 1) the Court should stay

2    the motion for summary judgment and reopen discovery so he can pursue the

3    agreement; and 2) no agreement exists and thus Defendants did not have authority

4    to screen the writing.  The Court will not stay the motion for summary judgment

5    and reopen discovery for a document Plaintiff alleges does not exist.

6        Further, at the October 2022 scheduling conference, Plaintiff was told to

7    work with Defendants to resolve the discovery request issues, and if they were not

8    able to resolve the issues, they were instructed to reach out to the Court for

9    assistance.  ECF No. 21.  Plaintiff copied the Court on his letter following up on

10   his discovery request in December 2022; the letter asks Defendants if the discovery

11   deadline should be delayed, but Plaintiff did not ask the Court to extend the

12   deadlines.  ECF No. 22.  Plaintiff did not contact the Court for assistance resolving

13   any discovery disputes as instructed.  Plaintiff did not file a motion to compel by

14   the deadline.  Plaintiff has not demonstrated he diligently sought the discovery.

15   Further, Plaintiff has not demonstrated that any agreement, or lack thereof, is

16   essential to oppose summary judgment when there are multiple pieces of evidence

17   that are contrary to Plaintiff's assertions.

18       Lastly, regarding Plaintiff's contention that the motion for summary

19   judgment should be stayed and discovery reopened for Plaintiff to pursue

20   Defendant Wise's employment history, Plaintiff again has not demonstrated he

diligently sought the discovery.  He also has not demonstrated that Defendant

Wise's past employment record is essential to opposing the motion for summary

judgment.  As such, Plaintiff's motion to stay the motion for summary judgment

and reopen discovery is denied.

**B. First Amendment**

Plaintiff contends Defendants violated his First Amendment rights by

refusing to submit Plaintiff's fictional story to be considered for publication in

*InRoads*.  ECF No. 1-2 at 2-3.

Section 1983 requires a claimant to prove (1) a person acting under color of

state law (2) committed an act that deprived the claimant of some right, privilege,

or immunity protected by the Constitution or laws of the United States.  *Leer v.*

*Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).  A person deprives another "of a

constitutional right, within the meaning of section 1983, if he does an affirmative

act, participates in another's affirmative acts, or omits to perform an act which he

is legally required to do that causes the deprivation of which complaint is made."

*Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  If there is no constitutional

violation, the inquiry ends, and the individual is entitled to qualified immunity.

*Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018).

A prisoner retains the First Amendment rights that are "not inconsistent with

his status as a prisoner or with the legitimate penological objectives of the

corrections system." *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir.

2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S.

119, 129 (1977)) (internal quotation marks omitted).  As such, a prison regulation

that infringes on a prisoner's right to free speech is valid only "if it is reasonably

related to legitimate penological interests." *Shaw v. Murphy*, 532 U. S. 223, 229

(2001) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see, e.g., Hargis v. Foster*,

312 F.3d 404, 410 (9th Cir. 2002) (rule subjecting prisoners to discipline for

coercing guard into not enforcing prison rules was, on its face, reasonably related

to legitimate penological interests).  When determining reasonableness, relevant

factors include: 1) whether there is a "valid, rational connection" between the

regulation and a legitimate and neutral governmental interest put forward to justify

it; 2) whether there are alternative means of exercising the asserted constitutional

right that remain open to inmates; 3) whether and the extent to which

accommodation of the asserted right will have an impact on prison staff, on

inmates' liberty, and on the allocation of limited prison resources; and 4) whether

the regulation represents an "exaggerated response" to prison concerns.  *Turner*,

482 U.S. at 89-91.

As to the first factor, a neutral regulation/practice is one that furthers an

important or substantial government interest unrelated to the suppression of

expression.  *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989).  Prison officials are

1    given deference in day-to-day prison operations; it is the prison administrators and

2    not the courts who make the difficult judgments concerning institutional

3    operations.  *Turner*, 482 U.S. at 84-85, 89.  To defeat summary judgment, Plaintiff

4    must demonstrate the regulations are not reasonably related to legitimate

5    penological interests or there is a genuine issue of material fact regarding the

6    applicability of the regulations.  *Bahrampour v. Lampert*, 356 F.3d 969, 973 (9th

7    Cir. 2004).

8    　　　Here, AHCC has a policy of its staff pre-screening written pieces before

9    submitting them for consideration for publication in *InRoads*.  ECF No. 27-1 at 3;

10   ECF No. 27-2 at 4.  AHCC has an important government interest in preventing

11   inmates from using their educational programs to disseminate sexual material to

12   children.  *See* ECF No. 24 at 3.  As Plaintiff has been previously informed by this

13   Court, the restriction on sexually explicit material is heightened when involving a

14   sex offender.  *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1155 (E.D. Wash. 2014)

15   (citing *Bahrampour*, 356 F.3d at 979).  Defendant Wise determined the piece was

16   not appropriate for publication due to the sexual content.  ECF No. 24 at 9-10; ECF

17   No. 27-7.  Although Plaintiff disagrees with Defendant Wise's determination the

18   sexual content was explicit and thus inappropriate for publication to children, the

19   Court affords the prison some discretion on determining impermissible sexual

20   material.  *See Turner*, 482 U.S. at 84-85, 89.  Further, Defendant Wise also had the

ORDER - 18

instruction from the WITC program that *InRoads* is published to children and

special populations whom are "sensitive to any kind of explicit material" and that

"graphic content" was not appropriate for publication.  ECF No. 27-4 at 2.

Defendant Wise applied that standard in pre-screening Plaintiff's piece.  ECF No.

24 at 3.

While Plaintiff contends the prison had no interest in pre-screening the

writing beyond checking for compliance with AHCC mail rules, ECF No. 1-2 at 4-

5, AHCC had multiple reasons to pre-screen the submissions, as discussed herein,

ECF No. 24 at 8-9.  While Plaintiff also contends Defendant Wise denied his piece

because of her religious beliefs, ECF No. 30 at 3-4; ECF No. 31 at 2, Defendant

Key agreed that Plaintiff's piece was inappropriate to submit for publication

consideration, ECF No. 27-9.  Defendant Key stated the prison has an interest in

ensuring nothing leaves the institution through the WITC that could cause negative

publicity for the facility or department.  *Id.*  A sex offender being allowed to

submit a story for publication to children that contains sexual content reasonably

could cause negative publicity for the facility; that negative publicity could

reasonably reach back to the inmates and cause negative behaviors in the inmate

population.  Defendants have demonstrated a legitimate interest that was

reasonably applied to Plaintiff.  Plaintiff has not demonstrated the regulations are

not reasonably related to a legitimate penological interest, and he has not

demonstrated there is a genuine issue of material fact regarding the application of the regulation to his piece.

As to the second factor, whether there are alternative means of exercising the asserted constitutional right that remain open to inmates, Plaintiff had the option to remove the sexual content or to submit the piece for publication elsewhere. ECF No. 1-2 at 10; ECF No. 24 at 10. The grievance coordinator suggested Plaintiff could have removed the sexual content so the piece could be submitted for publication in *InRoads*. ECF No. 1-2 at 10. Plaintiff also could have submitted the piece to a different publisher, one that does not get published to children and does not have the same limitations on the content of writing. ECF No. 24 at 10. Where "other avenues" remain available for the exercise of the asserted right, courts should be particularly conscious of the "measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Turner,* 482 U.S. at 90 (citing *Pell v. Procunier,* 417 U.S. 817, 827 (1974); *see also Jones,* 433 U.S., at 131. Plaintiff does not contest the fact that other avenues remained available to him.

Regarding the third factor, whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty, and on the allocation of limited prison resources, the Court must consider whether accommodation of the assert right will have a significant ripple effect on fellow

inmates or staff. *Turner*, 482 U.S. at 90. Here, if Plaintiff were allowed to submit his writing directly for publication to *InRoads* without Defendant Wise's pre-screening, allowing him to submit material the prison deemed sexually explicit for consideration for publication to children, this could have a ripple effect in the prison. This could impede the prison's ability to easily apply valid screening policies to materials in the WITC program and other volunteer programs. The potential publication of explicit writing that is then mailed to inmates so they have a copy of their publication would then create more mail screening required by the prison. Taking away Defendant Wise's pre-screening role would also move the burden to the WITC volunteers and/or *InRoads* editorial reviewers to handle all screening. However, WITC volunteers and *InRoads* reviewers are not prison staff and thus would not have the training and experience, nor the obligation, to screen submissions for consideration of content that when distributed back to inmate writers could impact the prison.

As to the last factor, the Court must consider whether the regulation is reasonable or an exaggerated response to the prison concerns. *Turner,* 482 U.S. at 90. Plaintiff has not offered an alternative that fully accommodates his rights at a *de minimis* cost to the valid penological interests. Plaintiff contends only that Defendant Wise should not have engaged in any pre-screening except screening for compliance with the mail policy. ECF No. 1-2 at 4-5. Plaintiff offers no

alternatives that enables Defendant Wise to comply with the WITC contract and programming standards set forth in the syllabus. Plaintiff does not present any evidence the regulation is an exaggerated response.

Defendants have presented evidence that the pre-screening regulation serves a legitimate penological interest and was applied neutrally to Plaintiff's submission. Plaintiff has not demonstrated there is a genuine issue of material fact regarding the regulation's legitimate penological interests nor the application of the regulation. Defendants are thus entitled to summary judgment on the First Amendment claim. *See Bruce v. Ylst,* 351 F.3d 1283, 1289 (9th Cir. 2003).

**C. Qualified Immunity**

Defendants contend that even if the Court found Defendant Wise's pre-screening of the *InRoads* submissions violated Plaintiff's First Amendment rights, Defendants would be entitled to qualified immunity. ECF No. 24 at 10-13. A "clearly established right," for purposes of determining whether a public official is entitled to qualified immunity, is one that is sufficiently clear that every reasonable official would have understood that what he or she is doing violates that right. *Mullenix v. Luna*, 577 U.S. 7 11 (2015). Qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The outcome-determinative question is "whether the violative nature of particular conduct is clearly established,"

*Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011), and the question must be asked "in light of the specific context of the case, not as a broad general proposition," *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*).

Plaintiff does not point to any clearly established right that was violated by Defendants pre-screening his writing submission and declining to submit it for consideration for external publication, when pre-existing policies gave Defendant Wise the authority to screen the submissions. There is no existing case law that would have made it evident to Defendants that they were violating Plaintiff's rights through their screening process. Plaintiff does not respond to the qualified immunity issue. ECF Nos. 30, 31, 33. As such, even if Defendants actions had violated Plaintiff's First Amendment rights, they would be entitled to qualified immunity, supporting the conclusion that Defendants are entitled to summary judgment on the First Amendment claim.

**D. Retaliation**

Plaintiff contends Defendant Key retaliated against him by threatening Plaintiff with removal from educational programs. ECF No. 1-2 at 8. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: 1) An assertion that a state actor took some adverse action against an inmate 2) because of 3) that prisoner's protected conduct, and that such action 4) chilled the inmate's exercise of his First Amendment rights, and 5) the action did

not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408

F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Plaintiff concedes that he was aware he was required to submit his writing to

Defendant, but he chose to submit it directly to Eastern Washington University for

consideration for publication in *InRoads*.  ECF No. 1-2 at 8-10.  Plaintiff thus

violated an established policy.  Defendant Key stated Plaintiff would be removed

from the program if he continued to violate the policy.  *Id.* at 6.  Plaintiff later filed

a grievance.  *Id.* at 10.  The filing of an inmate grievance is protected conduct.

*Rhodes,* 408 F.3d at 568.  However, Defendant Key's actions took place prior to

the grievance and thus were not based on Plaintiff's protected conduct but rather

were based on Plaintiff's violation of a policy.

Next, Plaintiff has not demonstrated Defendant Key took an adverse action

against Plaintiff.  A threat to remove Plaintiff from the WITC is not sufficient to be

the basis of a retaliation claim.  *See Gaut v. Sunn,* 810 F.2d 923 (9th Cir. 1987).

Further, Defendants' actions had legitimate correctional goals, as discussed *supra*,

of following an established policy of pre-screening writing for compliance with

rules and policies and ensuring graphic material is not submitted for consideration

for publication to children by an inmate in their program.  Defendant Key's action

of ensuring an inmate complied with established policies, and removing him from

the program if he refused to comply with the policies, also serves penological

interests, such as ensuring materials are not sent with program volunteers in violation of the policies.  *See* ECF No. 24 at 15-16.

Plaintiff's responsive filings did not address the retaliation claim.  ECF Nos. 30, 31, 33.  Thus, Plaintiff has not provided any admissible evidence to create an issue of fact on this claim.  There is no genuine issue of material fact concerning the retaliation claim, and Defendants are entitled to summary judgment on the claim.

**E. Washington State Constitution Claim**

Plaintiff contends Defendant Key violated Article I, section 5 of the Washington State Constitution by threatening to remove Plaintiff from the WITC program.  ECF No. 1-2 at 12.  Section 1983 does not provide a cause of action for violations of state constitutional rights.  *Peltier v. Sacks,* 328 F.Supp.3d 1170, 1184-85 (W.D. Wash. 2018).  Thus, Defendants are entitled to summary judgment on this claim.

**F. Conclusion**

Viewing the facts and drawing inferences in the manner most favorable to Plaintiff, no genuine dispute of material fact exists regarding any of Plaintiff's claims.  Plaintiff was given notice of the summary judgment rule requirements, ECF Nos. 28, 29, yet Plaintiff did not present evidence to demonstrate there is a

triable issue of material fact on each element of his claims.  As such, Defendants

are entitled to summary judgment on all claims.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Defendants' Motion for Summary Judgment, **ECF No. 24**, is **GRANTED.**

2.  Plaintiff's Motion to Stay Summary Judgment and Extension for Completion of Outstanding Discovery, **ECF No. 30**, is **DENIED.**

3.  Defendants' Motion to Stay Remaining Scheduling Order Deadlines, **ECF No. 34**, is **DENIED as moot.**

4.  Plaintiff's Complaint, **ECF No. 1**, is **DISMISSED** with prejudice.

5.  The Court certifies that an appeal of this Order would not be taken in good faith.  *See* 18 U.S.C.  18 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, enter judgment accordingly, and provide copies to counsel and *pro se* Plaintiff.

DATED June 2, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 26