FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 26, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NEIL GRENNING,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JAMES R. KEY, sued in his official and individual capacity, and ANN WISE, sued in her official and individual capacity,<br>　　　　　　Defendants. | No. 2:22-cv-00136-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION TO VACATE AND SET ASIDE JUDGMENT<br><br>**ECF No. 37** |

Before the Court is Plaintiff's Motion to Vacate and Set Aside Judgment, ECF No. 37. Defendants filed a response to the Motion to Vacate, ECF No. 38, and Plaintiff filed a reply, ECF No. 43. The Court has reviewed the record and is fully informed. For the reasons set forth below, the Court denies Plaintiff's Motion to Vacate, ECF No. 37.

## BACKGROUND

Plaintiff, an inmate at Airway Heights Corrections Center (AHCC), filed a *pro se* Complaint in the Spokane County Superior Court, alleging Defendants

ORDER - 1

violated his rights by refusing to submit a story he wrote to be considered for publication, and informing Plaintiff he would be removed from a writing program if he did not follow the program protocols. ECF No. 1-2. Specifically, Plaintiff brought a Section 1983 claim, alleging Defendants violated Article I, Section 5 of the Washington State Constitution and the First Amendment of the United States Constitution. *Id*. Defendants removed the case to this Court. *Id.* Defendants filed a Motion for Summary Judgment, ECF No. 24, and Plaintiff filed a Motion to Stay, ECF No. 32. The Court granted Defendants' Motion for Summary Judgment. ECF No. 35. Plaintiff then filed a Motion to Vacate and Set Aside Judgment. ECF No. 37.

**LEGAL STANDARD**

A district court may reconsider its disposition of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 59(e). *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993); *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989). A court may only alter or amend a previous ruling or judgment under Rule 59(e) if: (1) it "is presented with newly discovered evidence"; (2) it "committed clear error or made an initial decision that was manifestly unjust"; or (3) "there is an intervening change in controlling law." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir.

ORDER - 2

2001)).  Rule 59(e) "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 54.78[1] (3d ed. 2000)).  When considering a Rule 59(e) motion, the court may disregard "repeated legal arguments" and "facts that were available earlier in the proceedings." *Zimmerman*, 255 F.3d at 740.

**DISCUSSION**

Plaintiff does not present newly discovered evidence and does not contend there was an intervening change in controlling law; thus, the Court must only consider whether it committed clear error, or the initial decision was manifestly unjust.  *See* ECF No. 37; *United Nat'l Ins. Co.*, 555 F.3d at 780.  Plaintiff contends the Court did not receive his timely submitted response to Defendants' Motion for Summary Judgment due to the prison not submitting his motion via ECF.  ECF No. 37 at 1-3.  Plaintiff contends the Court's initial decision was thus erroneous or manifestly unjust because Plaintiff's response, and the evidence submitted with the response, was not considered by the Court.  *Id.*  Defendants contend Plaintiff has failed to establish the Court committed clear error or that a manifest injustice has occurred.  ECF No. 38 at 4-8.

ORDER - 3

Plaintiff contends he submitted his response to be scanned by a prison staff on April 19, 2023. ECF No. 37 at 2. He contends he provided his response to a staff who then scanned the documents. *Id.* at 8-9. He states the staff sent the scanned documents to a law librarian or legal liaison, who was supposed to file the documents, but the documents were never filed on ECF in this case. *Id.* Plaintiff states he did not receive a confirmation the documents were filed on ECF but contends confirmations are often not received even when the documents are successfully filed. *Id.* Plaintiff submitted a copy of a scanning request document, dated April 19, 2023, which indicates Plaintiff submitted 194 pages to be scanned, *id.* at 12-13, as well as a handwritten document Plaintiff labeled "Grenning's personal log of case events," which indicates Plaintiff "ECFed tentative Response to Summary Judgment," *id.* at 15-17. Plaintiff also submitted a kite communication between himself and a law library supervisor, Mr. Christenson, who stated there was no record of Plaintiff's reported request for scanning. *Id.* at 19.

Defendants submitted a declaration from Mr. Christenson, who stated that documents are scanned and submitted to ECF in manners in which there is always written documentation of the scanning, which he retains. ECF No. 39 at 2-3. The documents are either: 1) brought to Mr. Christenson in the Law Library and then scanned by Mr. Christenson and filed in the presence of the inmate; or 2) Mr.

ORDER - 4

1  Christenson or another staff goes to the inmate's unit, collecting the documents and
2  Scanning Request (with "waiver of presence" portion signed), and Mr. Christenson
3  then scans and files the documents; or 3) staff collect the documents and scanning
4  form (with the "waiver of presence" portion signed), and they then scan the
5  documents and email them to Mr. Christenson, who files the documents. *Id.* at 2-3.
6  He also stated email confirmations are sent to staff notifying them when e-filing is
7  completed. *Id.* at 3. Mr. Christenson stated Plaintiff has submitted eight
8  documents to Mr. Christenson for e-filing, four e-filings to other staff, and 13
9  documents for legal photocopying. *Id.* However, there is no documentation of
10 Plaintiff requesting e-filing of the alleged April 19 response. *Id.* at 4. Mr.
11 Christenson stated he does not have documentation of the request for scanning
12 Plaintiff submitted, and the form does not have Mr. Christenson's name on it, nor
13 the total number of pages scanned. *Id.* He states there are "no circumstances
14 under which I do not attach my name to the Scanning Request Sheet if I have e-
15 filed the document." *Id.* The request form also should have the total number of
16 pages scanned to confirm the documents were scanned in their entirety. *Id.*

17      Defendants also submitted a declaration from Ms. Hansen, a Policy/Public
18 Disclosure Coordinator/Administrative Assistant at AHCC. ECF No. 40. Ms.
19 Hansen stated that AHCC distributes a copy of CM/ECF notices to inmates, and a
20 log is kept of the receipts and distribution. *Id.* at 2. A log of Plaintiff's CM/ECF

ORDER - 5

notifications indicates Plaintiff was provided notice of all the filings in this case; the log documents that Plaintiff's alleged April 19, 2023 response was not filed on CM/ECF. *Id.* at 4. Ms. Hansen also provided a copy of the AHCC policy titled Legal Access for Incarcerated Individuals, which states that when a court sends an electronic notice, the notice and document are distributed to staff to deliver to the inmate. *Id.* at 2, 16. The policy also indicates that electronically filed cases will be scanned by the Law Library Supervisor. *Id.* at 16.

As Plaintiff has had 25 legal documents copied or scanned since January 2022, Plaintiff should be familiar with the process by which documents are scanned and e-filed. He contends he provided the documents and copy request to staff, who then scanned them. ECF No. 37 at 8. However, the copy request form does not show the number of pages scanned. *Id.* at 13. Mr. Christenson does not have a copy of the request form, never signed the form indicating it was completed, and does not have any emails regarding the request. ECF No. 39. Plaintiff concedes he never received a receipt of the filing, ECF No. 37, and he did not follow up on the filing until after this Court dismissed the case.

Plaintiff's reply to Defendants' response contends the AHCC staff could have accidentally emailed the scan to the wrong person and could have misrouted the scan request form. ECF No. 44 at 2. If both the email and the form were misrouted, Plaintiff contends there would be no proof he requested the documents

ORDER - 6

1  be scanned and filed. *Id.* at 2-3. He also contends the scan request form was

2  signed by a staff, Kerr; however, the signature was verified by a different staff,

3  McCains, according to Plaintiff. ECF No. 44 at 3. There is no corroboration that

4  the document was scanned by Kerr.

5  There is thus no corroboration for Plaintiff's allegation that he submitted the

6  documents for e-filing on April 19, 2023. Plaintiff therefore asks the Court to

7  consider his response that appears to have been submitted for the first time on June

8  20, 2023, almost two months after the deadline. The Court need not consider an

9  untimely response under Rule 59(e), as such motion cannot be used to raise

10 arguments or present evidence that could have been presented earlier in the

11 proceedings. *See Zimmerman*, 255 F.3d at 740; *see also Robinson v. Waterman*, 1

12 F.4th 480 (7th Cir. 2021).

13 Even if the Court considered Plaintiff's untimely response, Plaintiff has

14 failed to demonstrate the initial decision was erroneous or manifestly unjust for the

15 reasons discussed *infra*.

16 **A. First Amendment**

17 Plaintiff contends the Court should have considered his response to the

18 motion, and the emails which demonstrate Defendants did not have an agreement

19 between AHCC and Eastern Washington University that called for AHCC to

20 screen submissions for undesirable content. ECF No. 37 at 5. Plaintiff contends

1  "[t]he question in this summary judgment is . . . whether there was a written
2  agreement between AHCC and EWU authorizing Wise to exercise content
3  discretion as a proxy for the publisher?" *Id.* at 25.  This is not the question
4  presented on summary judgment.

5      This Court found Defendants met their burden and demonstrated there was
6  an absence of a genuine dispute of material fact.  ECF No. 35.  The burden was
7  then on Plaintiff to demonstrate by affidavits, depositions, answers to
8  interrogatories, or admission on file "specific facts showing that there is a genuine
9  [dispute of material fact] for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
10  (1986).  The question is whether Plaintiff has presented a genuine dispute of
11  material fact.  Plaintiff has failed to do so.

12      Plaintiff contends he "supplied considerable evidence disputing every
13  material fact." ECF No. 37 at 37.  The evidence supplied by Plaintiff is largely
14  evidence previously submitted to the Court, including the course syllabus, the kite
15  response from Defendant Wise, the letter from Plaintiff to Ms. Wilson, the
16  publication agreement, a copy of Plaintiff's story, the letters to and from Defendant
17  Key, the volunteer guidebook, DOC policy 530.100, a description of Defendant
18  Wise's position, and notes from a discussion with Mr. Martin.  ECF No. 37-1.  The
19  Court declines to readdress the evidence previously considered and addressed in
20  the June 2023 Order.

ORDER - 8

Plaintiff also submitted additional emails, a copy of the relevant published *InRoads* edition, an April 2023 declaration from Plaintiff, and an October 2022 declaration from Michael Lauderdale. *Id.* Plaintiff contends the emails demonstrate there was no agreement for AHCC to pre-screen the submissions, and Plaintiff's declaration states Natalie, who "runs the WITC program," told him in October 2022 that there were no screening criteria or directives given to AHCC regarding excluding submissions, and that AHCC did not have authority to determine what was published in *InRoads*. ECF No. 37 at 5; ECF No. 37-1 at 193. Mr. Lauderdale's statement also indicates he does not recall any rules being distributed, and that submissions were to be routed through Defendant Wise, at her direction. ECF No. 37-1 at 21-22. However, as discussed in the June Order, even if a written agreement does not give AHCC authority to determine what is published in *InRoads*, there was a publication agreement, volunteer agreement, and DOC policies that supported Defendants' decision to not allow Plaintiff to submit his piece for publication. *See* ECF No. 35. Plaintiff's contention that a WITC staff stated AHCC does not have authority to determine what is published in *InRoads* does not change the Court's analysis; Defendants have never alleged that they had final authority to determine what is published in *InRoads*, but rather that they have authority to determine what is submitted by individuals participating in the program in their prison.

ORDER - 9

Plaintiff focuses on whether a written agreement exists that specifically empowered Defendant Wise to pre-screen the submissions for *InRoads*. ECF No. 37. Plaintiff does not point to any case law that requires a written agreement between a program run by volunteers in a prison and the prison, for the prison to be able to exercise authority over a program in its own facility. Plaintiff also contends that AHCC has no authority to pre-screen submissions for any reason except to ensure they comply with specific DOC policies and contends WITC has full authority to determine what is published. *Id.* at 22, 25. However, Plaintiff's contention that a volunteer program has full authority over what inmates can send outside the prison through its program would run afoul of precedent and public policy. Prison officials are given deference in day-to-day prison operations; it is the prison administrators who make the difficult judgments concerning institutional operations. *Turner v. Safley*, 482 U.S. 78, 84-85, 89 (1987). As such, the burden cannot be placed on volunteers, such as the college students teaching in WITC, to ensure that any actions they take do not compromise a legitimate penological interest in the prison. While WITC can determine its own publishing criteria once they receive a submission for publication in *InRoads*, WITC has no authority to determine what inmates may send out of the prison through its volunteer program. DOC policy explicitly prohibits volunteers from accepting correspondence from offenders and prohibits volunteers from taking items from inmates out of the

ORDER - 10

1  prison or communicating with offenders via mail without approval.  ECF No. 37-1
2  at 86, 101.

3      Further, AHCC had important government interests unrelated to suppression
4  of expression when regulating the submissions.  ECF No. 35. at 17-20.  Plaintiff
5  contends AHCC did not have a legitimate interest, but rather that Defendant Wise
6  would not allow the story to be submitted because of her own personal religious
7  views.  ECF No. 37 at 23-24.  Plaintiff previously made the same argument and
8  relies on the same evidence to support the contention, therefore the Court has
9  considered and rejected this argument.  *See* ECF No. 35.

10      Next, Plaintiff contends his status as a sex offender is not a material fact, and
11  that policies apply generally to all inmates regardless of their conviction.  ECF No.
12  37 at 25.  However, restrictions on sexually explicit material are heightened when
13  involving a sex offender.  *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1155 (E.D.
14  Wash. 2014) (citing *Bahrampour v. Lampert*, 356 F.3d 969, 979 (9th Cir. 2004)).
15  The Court also affords the prison discretion in determining impermissible sexual
16  material.  *Turner*, 482 U.S. at 84-85.  Additionally, protection of the public is a
17  legitimate penological interest.  *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003).

18      Plaintiff also contends that parents were warned the publication would
19  include age-inappropriate material.  ECF No. 37 at 25. Plaintiff appears to believe
20  his submission met WITC submission guidelines and was appropriate for children

ORDER - 11

to read, because books like "Twilight" are aimed at children and contain sexual content, and because sex education starts in the fourth grade due to ignorance about sex being determinantal to mental health.  ECF No. 37-1 at 214.  Plaintiff is not similarly situated to an elementary school teacher nor an author of young adult books; rather, he is subject to the reasonable limitations imposed by AHCC pursuant to their legitimate penological interests.  There is also no evidence parents were warned that individuals convicted of sex crimes against children may be publishing stories addressing sex in a publication disseminated to their children.  As discussed in the June Order, a sex offender being allowed to submit a story for publication to children that contains sexual content reasonably could cause negative publicity for the facility; that negative publicity could reasonably reach back to the inmates and cause negative behaviors in the inmate population.  ECF No. 35 at 19.  Defendants have demonstrated a legitimate penological interest that was reasonably applied to Plaintiff.

Next, Plaintiff contends the regulation of the submission was not content-neutral and thus violated *Turner*.  ECF No. 37 at 29-30.  However, the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."  *Overton,* 539 U.S. at 132.  Further, Plaintiff misconstrues the content-neutrality requirement.  Content neutral under *Turner* "is not the 'content neutrality' we demand in the other areas of First Amendment Jurisprudence."

1  *Jones v. Slade*, 34 F.4th 1124, 1135 (9th Cir. 2022).  Under *Turner*, a regulation is
2  neutral if it applies to specific types of materials "solely on the basis of the
3  materials' potential effect on the prison's legitimate objectives." *Mauro v. Arpaio*,
4  188 F.3d 1054, 1059 (9th Cir. 1999); *Bahrampour*, 356 F.3d at 976.  As discussed
5  *supra*, Defendants identified reasons for restricting Plaintiff's submission that were
6  related to the materials' potential effect on the prison's legitimate objectives.
7  There must be a rational relationship between the restriction and the interest, and
8  the inquiry is highly deferential; to invalidate a regulation, the court must
9  determine "the logical connection between the regulation and the asserted goal is
10 so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-
11 90.  A court may uphold a regulation even if prison officials are unable to "prove
12 that the banned material actually caused problems in the past, or that the materials
13 are 'likely' to cause problems in the future," and the officials need not demonstrate
14 that the policy in fact advances the prison's interests- it is enough that officials
15 "might reasonably have thought that the policy" would do so.  *Mauro*, 188 F.3d at
16 1060.  Defendants have presented a reasonable explanation for the connection
17 between the regulation and the asserted goal, and Plaintiff has not proven that the
18 regulation is invalid.
19      The Court notes that policies restricting sexual content in prisons have been
20 upheld in numerous cases in the Ninth Circuit.  *See, e.g., id.* at 1063 (upholding

ORDER - 13

1  restriction on possessing sexually explicit materials in the prison); *Bahrampour*,
2  356 F.3d at 979 (upholding prohibition on inmates possessing sexually explicit and
3  role-playing materials); *Fabricant v. Shartle*, No. CV-15-00236-TUC-JGZ, 2018
4  WL 11265152, at *10 (D. Ariz. Mar. 27, 2018) (upholding prohibition of sexually
5  explicit materials in prison); *Prison Legal News v. Ryan*, 39 F.4th 1121 (9th Cir.
6  2022) (upholding most policies concerning regulation of sexually explicit
7  publications in the prison); *Vanaman v. Molinar*, No. CV 17-00222-TUC-JCH,
8  2021 WL 613466, at *12 (D. Ariz. Jan. 29, 2021), aff'd, No. 21-15260, 2022 WL
9  2751539 (9th Cir. July 14, 2022), and motion for relief from judgment denied, No.
10 CV-17-00222-TUC-JCH, 2023 WL 2585297 (D. Ariz. Mar. 21, 2023) (upholding
11 restriction on inmates convicted of sex offenses possessing materials that have
12 pictures of partially clothed children); *Bland v. Pierson, et al.,* No.
13 220CV01165DADDMCPC, 2023 WL 5998978, at *1 (E.D. Cal. Sept. 15, 2023)
14 (upholding restriction prohibiting "materials that appeal to deviant sexual groups
15 or conduct in which one of the participants is a minor and appears to be under 18
16 years of age").  While Plaintiff contends his story should not have been restricted
17 due to sexual content, ECF No. 37 at 23, Defendants' restriction is in line with
18 many other prisons' restrictions that have been upheld.
19      While Plaintiff lists "facts in dispute," his contentions do not set forth a
20 genuine issue of material fact.  ECF No. 37 at 25-26.  For example, Plaintiff

ORDER - 14

disputes the fact that his conviction is material, and that the sensitivity of the readers of *InRoads* is a relevant factor and contends it was stated without context. *Id.*; ECF No. 37 at 45.  For the reasons discussed herein, Defendants reasonably considered both facts.  Plaintiff contends Defendants made conclusory statements about behavioral standards and expectations and have not specified what guidelines Plaintiff could have violated.  *Id.*  Defendants provided a copy of the syllabus, which states writers "[a]re expected to adhere to all DOC/AHCC behavioral standards in both their writing and in class.  Students are already aware of what these standards and expectations are, but if you have questions, please contact Community Partnership Program Coordinator Ms. Wise."  ECF No. 27-2 at 2.  The syllabus also states, "[i]Inappropriate content or conduct will be reported."  *Id.* at 3.  Thus, the syllabus establishes Plaintiff should be familiar with the standards and expectations and had an opportunity to seek clarification if needed.  His declaration that he now is not aware of what standards he may have violated does not create a disputed material fact.

Plaintiff also offers his own interpretations of facts, stating Defendants set forth facts without context.  ECF No. 37 at 47.  Plaintiff contends he was only informed in class that Defendant Wise screened submissions to determine if they violated DOC policies, and he was not informed Defendant Wise would pre-screen the submissions using the WITC screening criteria.  *Id.*  However, even with

ORDER - 15

1  Plaintiff's added context, there is no disputed material fact. It is well-established

2  Defendant Wise had the ability to screen the submissions, and the class was

3  informed of the screening.

4  Plaintiff also submitted emails that support Defendants' contentions. While

5  WITC volunteers did not tell Plaintiff to omit anything from his story draft, one of

6  the instructors, Kevin, noted "I also recall other allusions to more violent sexual

7  behavior in that workshop . . . which made me inappropriately lenient toward

8  passages like [Plaintiff's]." ECF. No. 37-1 at 82. Another instructor, Clare, noted

9  "even if Ann had approved the piece in question to be submitted to *InRoads*, the

10  managing editors and I would most likely not have approved it after that (or only

11  with cuts). It's just that [Plaintiff] had apparently misunderstood certain things

12  about how WITC/*InRoads* works, so he somehow ended up thinking that we had

13  venues were stories with adult content could be published without exposing

14  minors." *Id.* at 81-82. Defendant Wise also clarified, "[b]ehavior standards would

15  include no writings with violent sexual behavior, explicit sexual behavior and any

16  criminological behavior. Anything that would not be accepted for publication

17  should not be read out loud in class . . ." *Id.* at 80. The email communications

18  suggest that preexisting standards were put in place by AHCC, and that some

19  WITC volunteers were not following the rules during all class sessions. The

20  emails also suggest Plaintiff's submission did not comply with AHCC behavior

ORDER - 16

standards, nor WITC's publication standards, and the emails confirm Defendant Wise was required to review and approve submissions. Thus, the emails support Defendants' contentions, and do not raise a genuine issue of material fact as Plaintiff contends.

Plaintiff contends he had a clearly established right to generate his creative writing and send it to EWU. ECF No. 37 at 27-28. However, as discussed *supra*, the WITC volunteers were required to abide by AHCC policies, including a prohibition from taking materials outside of the prison from inmates and from accepting mail from inmates. Further, Plaintiff was informed that his submission had to be sent through Defendant Wise. ECF No. 27-2 at 4. Plaintiff also had the opportunity to submit his piece to other publications. ECF No. 35 at 20. Defendant Wise informed Plaintiff his submission was not appropriate to submit for *InRoads*. ECF No. 37-1 at 7. Thus, Plaintiff did not have a right to submit the piece when doing so was conflicted with AHCC's legitimate penological interests.

Plaintiff has not met his burden in demonstrating there is a genuine issue of material fact as to the First Amendment claim.

### B. Retaliation

Plaintiff contends Defendant Key's April 2019 letter establishes a retaliation claim. ECF No. 37 at 32. This Court found Defendants met their burden and demonstrated there was an absence of a genuine dispute of material fact. ECF No.

ORDER - 17

35.  As discussed *supra*, the burden was then on Plaintiff to demonstrate by affidavits, depositions, answers to interrogatories, or admission on file "specific facts showing that there is a genuine [dispute of material fact] for trial." *Celotex Corp.*, 477 U.S. at 323.  Plaintiff has failed to do so here.

As discussed *supra*, Plaintiff was aware of the requirements of the WITC program, including the need to submit the piece to Defendant Wise for screening.  He was also aware of the requirement that he abide by all AHCC policies.  As discussed in the June Order, Plaintiff violated established policy, and Defendant Key's response to Plaintiff occurred prior to Plaintiff filing a grievance.  ECF No. 35 at 23.  Plaintiff contends he has set forth evidence that presents a genuine issue of material fact as to the prison officials' motive for adverse action.  ECF No. 37 at 32-33.  However, the threat of removing Plaintiff from WITC was not sufficient to establish a retaliation claim.  ECF No. 35 at 23.  The remainder of Plaintiff's contentions rest on a finding that Defendant Key's letter was a retaliatory action, thus Plaintiff has failed to present a genuine issue of material fact as to the retaliation claim.

**C. Qualified Immunity**

Plaintiff contends Defendants were not entitled to qualified immunity.  ECF No. 37 at 37.  Plaintiff contends Defendants should have known they were violating his First Amendment rights in censoring him due to their concern for

ORDER - 18

1  negative publicity.  *Id.* at 37-39.  However, as discussed *supra*, Defendants did not
2  violate Plaintiff's rights, and Defendants offered a legitimate penological interest
3  that required they not allow Plaintiff to submit a piece containing inappropriate
4  content for consideration for publication and distribution to children.  As discussed
5  in the June Order, Plaintiff has not established it should have been evident to
6  Defendants they were violating Plaintiff's rights.  ECF No. 35 at 23.  Thus, even if
7  Defendants had violated Plaintiff's rights, they would be entitled to qualified
8  immunity.

**CONCLUSION**

Plaintiff has not demonstrated that he timely submitted his response to the Motion for Summary Judgment, and therefore has not demonstrated that the Court should consider his response.  Further, even if the Court considered Plaintiff's response, Plaintiff has not demonstrated a genuine issue of material fact and therefore has not demonstrated the June Order was clearly erroneous or manifestly unjust.  Therefore, the Court declines to vacate the June Order.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Vacate and Set Aside Judgment, **ECF No. 37**, is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel and *pro se* Plaintiff.

DATED September 26, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 20